AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Central District of California

United States of America
v.
Luis Alfredo de la Rosa Rios, Ernesto Cisneros, Jesse Contreras, and Haylee Marie Grisham,

*Defendant(s)*

Case No. 2:22-mj-00167-DUTY

FILED
CLERK, U.S. DISTRICT COURT
1/13/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: DL DEPUTY

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __January 10, 2022__ in the county of __Los Angeles__ in the __Central__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 United States Code, Sections 1959(a)(1), 2(a) | Violent Crime in Aid of Racketeering: Murder; Aiding and Abetting |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

/S/
*Complainant's signature*

Seamus Kane, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 01/13/2022

*Judge's signature*

City and state: Los Angeles, California

Hon. Rozella A. Oliver, U.S. Magistrate Judge
*Printed name and title*

AUSA: Yu, x2431

**AFFIDAVIT**

I, Seamus F. Kane, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since January 2015.  I am currently assigned to a Criminal Enterprise Squad at the Los Angeles Field Office of the FBI, which conducts investigations into gang activity in conjunction with the Los Angeles Metropolitan Task Force on Violent Gangs ("LAMTFVG"), a multi-agency Federal, state, and local gang task force.  Since July 2015, I have primarily worked on investigations targeting violent street gangs involved in the possession with intent to distribute and distribution of controlled substances, as well as conspiracy to do the same, in violation of 21 U.S.C. §§ 841(a)(1), and 846; firearms offenses, in violation of 18 U.S.C. §§ 922(g), and 924(c); and racketeering offenses, in violation of 18 U.S.C. § 1962.  I have completed academic research in the areas of controlled substances, criminal organizations, and criminal theory.  I earned an undergraduate degree in criminal justice in March 2010 and a graduate degree in criminal justice in May 2014.  Since graduating from the FBI Academy, I have conducted personal open-source research into gangs and drugs, discussed the topic with other experienced special agents and law enforcement officers, and interviewed

1

numerous gang and drug informants and defendants about gang and drug subcultures.

2. My experience as a SA with the FBI includes, but is not limited to, conducting physical surveillance, interviewing witnesses and subjects, executing search and arrest warrants, and operating informants. I have received training in, and have experience in, the investigation of violations of federal law, including violations of federal drug conspiracy laws and racketeering offenses. I have participated in several gang investigations involving the organized distribution of illegal drugs. I have participated in multiple arrests for drug-related offenses. I have participated in the execution of search warrants, which have resulted in the seizure of illegal drugs, and other evidence of federal and state criminal violations. I have also supervised and assisted in the supervision of the activities of informants who have provided information, and other assistance resulting in federal and state prosecution of drug, gun, and racketeering offenders. I have become familiar with the methods, language, structures, and criminal activities of street gangs and transnational gangs operating within and outside of this judicial district.

## II. **PURPOSE OF AFFIDAVIT**

3. This affidavit is made in support of a criminal complaint against, and arrest warrants for, LUIS ALFREDO DE LA

2

ROSA RIOS ("RIOS"), ERNESTO CISNEROS ("CISNEROS"), JESSE CONTRERAS ("CONTRERAS"), and HAYLEE MARIE GRISHAM ("GRISHAM") (collectively, the "defendants") for violations of 18 U.S.C. § 1959(a)(1) (Violent Crime in Aid of Racketeering) and 18 U.S.C. § 2 (Aiding and Abetting) ("COMPLAINT OFFENSES").

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrant and complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. STATEMENT OF PROBABLE CAUSE

#### A. Summary of Probable Cause

5. On January 10, 2022, in South Los Angeles, California, within territory controlled by the Florencia 13 ("F13") gang (near 1712 E. 87th Street), RIOS, CISNEROS, CONTRERAS, and GRISHAM, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value, from F13, and for the purpose of gaining entrance to, and maintaining and increasing position in F13, an enterprise engaged in racketeering activity, murdered victim

3

F.A. in violation of California Penal Code Sections 187 and 189, all in violation of 18 U.S.C. § 1959(a)(1).

    **B.    Background on F13, the Enterprise[1]**

    6.    F13, including its leaders, members, and associates, constitutes an enterprise as defined in 18 U.S.C. § 1959(b)(2), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce.  F13, through its members and associates, engaged in racketeering activity, as set forth in 18 U.S.C. §§ 1959(b)(1), 1961(1), that is, acts involving murder and robbery, in violation of California law, and offenses involving trafficking in controlled substances, in violation of 21 U.S.C. §§ 846, 841.

    a.    F13 is a multi-generational gang founded in Los Angeles, California in the early 1950s.  The gang began as a small group of individuals who lived in and around the area of Florence Boulevard, in and near Los Angeles, California. Initially, the gang was primarily involved in street robberies,

---

[1] The background information on F13 contained in this paragraph is based on my background, training, and experience, as well as interviews with witnesses, cooperating defendants, informants, and suspects, and communication with other law enforcement officers.

Between 2013 and present, I am aware of prosecutions of over fifty F13 members and associates in two federal racketeering cases within the Central District of California, captioned *United States v. Laredo, et al.*, CR No. 13-537-RHW, and *United States v. Laredo, et al.*, CR No. 18-892-AB.  In both cases, F13 was the charged enterprise.  Defendants in both cases pleaded guilty, with admissions that F13 was an enterprise, and were found guilty at trial in CR 13-537-RHW, wherein a jury found that F13 was an enterprise.

drug sales, and fighting with rival gang members in "turf battles." Through the years, the gang dramatically increased its membership by absorbing smaller, less powerful local gangs.

      b.  F13 is primarily a Latino street gang. F13 gang members are involved with various violent crimes including acts involving murder, assaults, robbery, and extortion, as well as narcotics trafficking, burglary, vehicle theft, and human smuggling, and money laundering. Associates of the F13 gang are aware of, participate in, and benefit from these criminal activities.

      c.  While F13's "territory" has changed over time, it historically has been contained within the approximate area bordered by the 10 freeway to the North, Imperial Highway to the South, the 110 freeway to the West, and the 710 freeway to the East; and it included at least the unincorporated Florence-Firestone neighborhood (also known as Florence-Graham) and parts of several nearby cities, such as Huntington Park, South Gate, Maywood, Bell, and Lynwood. Based on the strength of its numbers and its reputation for violence, F13 controls drug trafficking and other illegal activities within its territory.

      d.  F13 is controlled by members and associates of the "Mexican Mafia," or "La Eme." The Mexican Mafia is an organized group of individuals who control much of the drug distribution and other criminal activities within California State Prisons, local county jails, and some federal prisons.

Members of the Mexican Mafia come from the ranks of local street gangs, including F13.  In return for allowing local street gangs to maintain control over their respective territories and for protecting the gangs' members and associates during periods of incarceration, the Mexican Mafia requires the gangs to collect and pay "taxes" on drug trafficking and other illicit and illegal conduct taking place in those territories (hereinafter, "extortionate taxes").  These illicit funds are intended to be controlled by, and are often held in trust by, gang members and associates for the Mexican Mafia member(s) in charge of a particular area.  Members and associates of F13 regularly pay extortionate taxes to F13, which in turns pays the Mexican Mafia members who oversee the gang; and the collection of extortionate taxes from drug dealers operating within F13's territory is a primary task of the gang's leadership on the streets, as is punishing individuals who fail to pay the requisite extortionate taxes.

    C.    **Defendants are F13 Members and Associates**

    7.    Based on my training and experience, and conversations with other law enforcement officers and agents, as well as my familiarity and personal involvement with this investigation and review of booking photographs on January 13, 2022, I am aware of the following:

a. RIOS is an F13 member. On January 12, 2022, RIOS admitted to detectives during a Mirandized interview that he is an F13 member with the moniker "Lil J." On January 10, 2022, during a traffic stop, RIOS told law enforcement that he was an F13 member, Tiny Locos clique, with the moniker of "Lil J." RIOS showed deputies the large F13 tattoo on his chest which reads, "FLORENCIA" and has a 13 in the middle of it. RIOS also has a tattoo of his clique "Tiny Locos" on the back of his left elbow.

b. CISNEROS is an F13 member and is known to associate with other F13 gang members, and has various tattoos which I believe to be F13 related, including an "F" on his face, FIP on his left forearm (meaning "Florencia in Peace") and an "F" on his right forearm. On January 13, 2022, CISNEROS, during a Mirandized interview, admitted F13 membership with a moniker of "Gonzo." Based on my training and experience, monikers are a common way to refer to gang members and associates, and to evade law enforcement detection (versus the use of real names).

c. CONTRERAS is an F13 member known to associate with other F13 gang members, and has tattoos of "F13" on his forearm, and "RIP Trigger 64," which I believe shows his allegiance to F13. Moreover, on or about January 12, 2022, in a post-arrest Mirandized interview CONTRERAS admitted he was an F13 gang member, Midnight Street Boyz, but claimed he had not

7

been "active" since having children. He said he used the moniker "Skinny Jack," but in a post-arrest interview, RIOS used the moniker "Flaco" to refer to CONTRERAS.

        d. On or about January 12, 2022, in a post-arrest Mirandized interview, GRISHAM admitted that she had been dating RIOS for approximately a year, knew that he was an F13 gang member, and had seen numerous tattoos indicating he is from F13. She also admitted that she had associated with him, and other F13 gang members, and in particular, on January 10, 2022, GRISHAM admitted she was present the night of the shooting and that GRISHAM, RIOS, and two other F13 gang members were looking for people to rob.

    **D. There is Probable Cause that Defendants Committed the COMPLAINT OFFENSES**

        1. <u>January 10, 2022 Murder of Victim F.A.[2]</u>

8. On January 10, 2022, victim F.A. and his girlfriend, A.M., were in the area of 1712 E. 87th Street, Los Angeles looking for residential property to purchase, when they were confronted by two men (later identified as RIOS and CISNEROS) who arrived in a black pickup truck. The two men, who both pointed guns at the victims, per video surveillance, confronted the victims, took chains from victim F.A.'s neck, and took a

---

[2] The information about the facts of the murder is based on law enforcement's interviews with suspects, witnesses, review of surveillance footage, and collection of physical evidence.

8

black walking stick away from victim A.M.  This encounter was captured on video surveillance.

9.   At some point after CISNEROS removed victim F.A.'s chains, victim F.A. and the two suspects exchanged gunfire. Victim F.A. ran toward an alley where he collapsed and the two suspects fled.

10.  On January 13, 2022, an autopsy of victim F.A. was conducted.  The manner of death will be deemed homicide and the cause of death is a single gunshot wound.

11.  In addition to surveillance video that captured the robbery and shooting, law enforcement obtained and reviewed video surveillance showing what happened to the occupants of the black pickup truck after the shooting.  Among other things, it showed a black pickup truck stopping on Junction Street in Los Angeles, wherein CONTRERAS[3] exited the driver's side rear seat, and went around to the front passenger seat to lift CISNEROS – who appeared to be injured – out of the truck and leaned him against a parked car.  The surveillance video also captured CONTRERAS removing items and clothing from CISNEROS (including CISNEROS's shirt), as well as appearing to hide certain items in a container on the side of a house.

    2.   <u>Murder Investigation</u>

12.  On the evening of January 10, 2022, at approximately 9:16 P.M., LASD Century Station received a call regarding shots

---

[3] LAPD Officer Earner identified CONTRERAS in the surveillance video because the day before, he had conducted a traffic stop of RIOS and CONTRERAS in a black pick-up truck.

fired at 1712 E. 87th Street. Upon arrival, police saw a man later identified as F.A. in an alley who had been shot. Victim F.A. was transported to St. Francis Medical Center where he was pronounced dead at approximately 9:38 p.m.

        a. Suspects' Statements

13. Based on my review of reports from LASD detectives, I know that statements were obtained from RIOS, CONTRERAS, GRISHAM, and CISNEROS. The following are summaries and not intended to be verbatim accounts of what they said.

        i. RIOS

14. In a post-arrest Mirandized interview, RIOS admitted involvement in the incident. RIOS told detectives that he was driving his truck, his girlfriend, GRISHAM, was in the front passenger seat, CONTRERAS sat behind RIOS, and CISNEROS sat behind GRISHAM. RIOS said he and his group were driving around looking to "make money," which he further explained meant to rob a person of property or money.

        a. As to the robbery itself, RIOS claimed that CONTRERAS told him to stop the truck upon seeing the victims and told RIOS to "get the chain," referring to victim F.A.'s chains/necklaces. RIOS said CONTRERAS handed him a gun and told him it was loaded. RIOS understood CONTRERAS wanted RIOS to rob victim F.A. of his chains. RIOS admitted he had a gun in his hand when he approached the victims, and took the female victim's walking stick and threw it in his truck and searched her for property.

   b. RIOS said that he saw CISNEROS remove victim F.A.'s wallet from F.A's pants pocket and RIOS stepped forward to take the wallet. RIOS admitted to firing his gun at least one time at victim F.A. and believed that CISNEROS also fired his gun.

   c. RIOS said he had victim F.A.'s wallet at one point, took out $100 and kept it, and then threw the wallet out on Avalon Boulevard. RIOS also admitted that he threw away the female victim's walking stick, and the white hooded sweatshirt he had been wearing.

   d. RIOS admitted discarding his white hooded sweatshirt because it had a bullet hole on the left side of his white hooded sweatshirt, where a bullet had grazed his left ribcage – which was later corroborated by consensual photographs of that area by detectives.

    ii. CONTRERAS

  15. Prior to conducting an interview of CONTRERAS, detectives placed CONTRERAS in a cell with someone working for law enforcement wherein CONTRERAS admitted F13 membership. While CONTRERAS was in the cell, CONTRERAS admitted he was in jail for robbery and murder. CONTRERAS said that he was in the backseat of a vehicle, handed his gun to another person who stepped out of the vehicle, and committed the robbery and shooting. CONTRERAS said he and his fellow F13 gang members were driving around, looking for someone to rob when they came upon the victim, who was wearing several chains around his neck. Upon seeing the chains, the group decided to rob the victim.

11

        iii. GRISHAM

16. In a post-arrest Mirandized interview, GRISHAM initially denied knowing of the robbery or shooting. However, she later admitted her presence at the robbery and shooting, and provided the following details.

    a. GRISHAM said she had been dating RIOS for approximately one year, and that she knew he was an F13 gang member, including having seen numerous F13 tattoos on his body.

    b. GRISHAM said that on the night of the shooting, she was in the front passenger seat of RIOS' truck. She said that the four of them, including two other F13 gang members, were looking for people to rob. The four of them drove around together, and she noticed that the "fat" one (which I believe to be CISNEROS based on my review of booking photographs) had a gun on him.

    c. As to the shooting itself, GRISHAM admitted that RIOS noticed someone (later identified as victim F.A.) and said "He has a nice chain, let's get it," which GRISHAM understood to mean that they were going to rob the victim. At that time, CONTRERAS handed RIOS a gun (that he had been carrying all day) and told RIOS it was loaded.

    d. GRISHAM said she saw CISNEROS pointing the gun at the victim, and ordered the victim to "give him his chains" and saw RIOS checking the female victim for any property as well. She heard several gun shots and saw RIOS run back into the car.

    e. When CISNEROS got back to the car, he appeared to have been injured and said he had broken his leg.

17. Detectives also conducted a jail operation where GRISHAM was placed in a controlled jail cell with someone working for law enforcement, which was recorded. Among other things, GRISHAM said the following.

    a. While GRISHAM had told detectives that she had not been involved in any other robberies, GRISHAM told the Perkins agent that she had participated in another robbery, earlier that same day at around 2:00 a.m. GRISHAM said she used the robbery proceeds to buy new clothes and shoes.

    b. While GRISHAM had told detectives she never possessed victim F.A.'s wallet, she said that she personally removed the cash from the wallet and then threw the wallet out the window of the black truck.

    iv.  CISNEROS

18. On January 13, 2022, in a Mirandized interview, CISNEROS admitted F13 membership and provided the moniker of "Gonzo." CISNEROS admitted driving around with the others looking to "make money," or rob people. CISNEROS admitted that he got out of the truck and confronted victim A.F., demanding his chains.

**E.  Motive Under 18 U.S.C. § 1959(a)(1)**

19. There is probable cause to believe that the crime of violence was committed either: (1) as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from the charged enterprise, and (2) for the purpose of gaining entrance to or maintaining or increasing position in F13.

20. RIOS, CISNEROS, and CONTRERAS are all F13 members and GRISHAM is an F13 associate, by way of her relationship with RIOS who GRISHAM knows to be an F13 member. The murder of victim F.A. occurred within F13's territory. This is significant because this particular location is close to where F13 gang members live. Based on my longstanding investigations into F13 and conversations with F13 members, to include informants, suspects, witnesses, and cooperating defendants, I know that F13 uses violence in order to protect its neighborhood and territory, and that committing acts of violence increases and maintains position within F13.

21. Additionally, the murder was committed during the commission of a robbery. Three F13 members and one associate were driving around, looking for people to rob within F13's territory. The F13 members were armed in advance and used those firearms to perpetrate the robbery. According to GRISHAM, the group committed a robbery the same day as the shooting, earlier that morning. RIOS, CONTRERAS, and GRISHAM all said they were looking to rob people for money, also known as pecuniary gain. F13's commission of violent crimes serves to preserve, protect, and expand the enterprise's criminal operations, and to promote discipline and enforce the rules within the F13 gang, and to promote a climate of fear, while enriching F13 members through

pecuniary gain. This climate of fear is necessary to maintain F13's stronghold over their territory.

## IV. CONCLUSION

22. For all the reasons described above, there is probable cause to believe that the defendants committed the COMPLAINT OFFENSES.

/S/
Seamus F. Kane, Special Agent,
Federal Bureau of
Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 13th day of January, 2022.

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

15